UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,　　　　Case #26-20165

　　Plaintiff,　　　　　　　　　　Hon. David M. Lawson

-vs-

TEX WARD,

　　Defendant.

_____/

## DEFENDANT TEX WARD'S MOTION AND BRIEF IN SUPPORT TO SUPPRESS WARRANTLESS SEARCH AND THE FRUITS OF THE WARRANTLESS SEARCH

Defendant Tex Ward, by and through his attorney, Patricia A. Maceroni, pursuant to Fed. R. Crim. P. 12(b)(3)(C) and the Fourth Amendment of the United States Constitution, moves to suppress all evidence obtained during, and as a result of, an unlawful traffic stop of a motor vehicle. In support thereof, Mr. Ward states:

1. On February 4, 2026, at around 8:00 p.m., Mr. Ward was driving his car through the city of Alma, heading towards his mother's

1

home. He was pulled over by an officer from the Alma police department.

2. Upon seeing the police car lights, Mr. Ward pulled his vehicle into the parking lot of a nearby gas station. Mr. Ward's driver's side window was broken, so he opened his door to speak with the officer. The police officer informed Mr. Ward that his taillights were not on. Mr. Ward was surprised and asked to check them. Officer Malek ordered him to stay in the car stating, "I can tell you they're not on…you can take my word for it."[1]

3. Mr. Ward produced the car registration and proof of insurance. Officer Malek ran the information through the LEIN system and allegedly, the proof of insurance had expired. Mr. Ward was ordered out of the car, patted down and handcuffed. He was arrested for the misdemeanor traffic violation of Operating a Motor Vehicle with No Insurance, contrary to MCL 257.328. He was placed in the back seat of the patrol car.

---

[1] The facts of the stop are from the body cam videos worn by the Alma police officers. Alma PD patrol cars are not equipped with video cameras.

4. The immediate seizure of Mr. Ward, his arrest and the warrantless search of his vehicle were in violation of his Fourth Amendment rights and long-standing United States Supreme Court precedent. US Am IV; *Coolidge v New Hampshire,* 403 U.S. 443 (1971); *Acevedo v California,* 500 U.S. 565, 580 (1991) (quoting *Mincey v Arizona,* 437 U.S. 385, 390 (1978); *Arizona v Gant,* 556 U.S. 332 (2009).

5. The police officers had no legal reason to search Mr. Ward's vehicle. Mr. Ward was handcuffed and in the patrol car. He never consented to the search. He was not a threat to the officers. He had been arrested on a misdemeanor traffic violation. No evidence of that crime would be found in the passenger compartment of the car. The search violated the United States Supreme Court's holding in *Gant, supra.* Nor can the police officers claim that the search was done pursuant to an inventory search. The Alma police officers violated the department's inventory and towing policy.

6. As a result of the illegal search of Mr. Ward's vehicle, he was indicted on one charge of Possession of an Unregistered

Destructive Device and one charge of Possession of Firearm Unidentified by Serial Number, contrary to 26 U.S.C. § 5861(d) and 26 U.S.C. §5861(i). Each charge is punishable by up to 10 years in the Bureau of Prisons.

7. Pursuant to the local court rules, undersigned counsel requested opposing counsel's concurrence in the relief requested. Opposing counsel does not concur.

8. The illegal seizure of Mr. Ward and the subsequent warrantless search of his vehicle mandates that the charges against him be dismissed. Mr. Ward relies more fully on the brief attached hereto.

THEREFORE, based on the above and consistent with the arguments presented herein, Tex Ward respectfully requests that this Honorable Court enter an order suppressing all evidence seized the night he was arrested and dismiss this case. Alternatively, Tex Ward requests that this Honorable Court schedule an evidentiary hearing so that a full determination of the issues can be made.

Respectfully Submitted,

/S/Patricia A. Maceroni
Patricia A. Maceroni (P44124)
Attorney for Tex Ward
111 East Court Street, Ste L-100
Flint, MI 48502
(810) 232-3600
Patricia_Maceroni@fd.org

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

-vs-

TEX WARD,

    Defendant.

_____/

Case #26-20165

Hon. David M. Lawson

## BRIEF IN SUPPORT OF MOTION TO SUPPRESS

### Statement of Facts

On February 4, 2026, Tex Ward was driving through the town of Alma heading to his mother and stepfather's home in Perrinton, Michigan. Tex had just recently moved back to his mother's home. Tex had been laid-off from his manufacturing job at Mueller Brass in Port Huron, Michigan. He had no luck finding other employment and lost his home. Tex's car broke down and on the night he was arrested, he was

6

driving a car given to him by Donna Achuff, the mother of his son. Donna had agreed to maintain the car's insurance and Tex would pay her back.

Seeing the police lights behind him, Mr. Ward pulled into the parking lot of a gas station. Because his driver's side window was broken and did not roll down, Mr. Ward opened his door when Officer Ethan Malek approached the car. He told Officer Malek why he opened the car door. Officer Malek told him his taillights weren't working. Mr. Ward was surprised and asked to check them. Officer Malek told him he could not check. The lights weren't working because "I can tell you they're not on…you can take my word for it." Malek Body Cam Video (MBCV) at 1:04.

Mr. Ward, detained in his car, produced the registration and proof of insurance. After running the vehicle information through the LEIN system, Mr. Ward was told that his insurance had expired. He was ordered out of the car, patted down and handcuffed. By this time, several other Alma police department police officers had arrived, in full uniform, and surrounded Mr. Ward.

Mr. Ward repeatedly asked why he was being arrested. Officer Malek engaged in a disingenuous dialogue, first informing Mr. Ward that

7

he was only being "detained" as he marched him back to the squad car, in handcuffs. As soon as he got him to the squad car, he told Mr. Ward he was under arrest for driving a car with no insurance, a misdemeanor. Mr. Ward, upset, cried "but you just said I wasn't under arrest!" MBCV 6:47-8:05.

Mr. Ward asked for his phone. Officer Malek refused. Mr. Ward shivered in the cold, handcuffed. He repeatedly stated he was scared, with "three guys around me with guns." He didn't understand what was going on. Officer Malek told him "Once you were in handcuffs, you're under arrest for operating without insurance, which is why you're in handcuffs." MBCV 8:28; 8:54.

Officer Malek did not read Mr. Ward his *Miranda* rights. After placing Mr. Ward in the backseat of the patrol car, he questioned him about what might be in the car. MBCV 10:05. Mr. Ward told him that there was a legal amount of marijuana that he had purchased in his backpack. The backpack was on the floor in the back seat. Mr. Ward also told Officer Malek that his registered firearm was under the front seat. MBCV 10:14.

At no point did Officer Malek ask Mr. Ward for consent to search the car. He left Mr. Ward in the patrol car and walked back to Mr. Ward's vehicle. He found the registered firearm under the driver's front seat. He asked his co-workers for a *Miranda* warnings card, as he had not been given one by the Alma Police Department. None of the officers had one. Officer Malek looked "it up on Goggle." He told his co-workers to "toss it" referring to Mr. Ward's car and walked back to his patrol car. MBCV 12:26.

After reading off the Goggled *Miranda* warnings from his phone, Officer Malek continued to interrogate Mr. Ward.[2] He told him that his car was going to be towed. Mr. Ward asked if his stepfather could come and get the car, or arrange a private tow to his home, so he wouldn't have to pay impound fees. Officer Malek refused.

Officer Malek walked back to Mr. Ward's car, where the officers were going through every bag and container found in the passenger compartment. Officers removed toys from bags that Mr. Ward had bought for his son's birthday. They dumped out the contents of the backpack in

---

[2] The validity of the Miranda warnings given to Mr. Ward and whether or not he intelligently waived his rights is argued in the Motion to Suppress all Statements. The facts surrounding his statements will be specifically set forth in that motion.

the back seat, finding what they excitedly believed to be the remnants of meth. Officer Malek walked back to the patrol car, demanding to know when was the last time Mr. Ward used meth? MBCV 20:35; 25:50-26:30.

Mr. Ward denied ever using meth. The powder residue was probably Adderall from when he worked the midnight shift. Officer Malek badgered Mr. Ward, belittling his answers and telling him he's "already lied multiple times." He walked back to the other officers and started listing the criminal charges he was going to file against Mr. Ward. MBCV 26:18-26:47.

As Officer Malek was talking, Officer Chase Albaugh was searching the trunk and opening every single package, bag and backpack he found. Notebooks were rifled and paperwork confiscated. Located within a backpack was a Captain Morgan's rum bottle that had been decorated with pieces of cloth. Inside the bottle was a clear liquid.

Officer Albaugh announced he had found a Molotov Cocktail. MBCV 31:02. Officer Malek went back to his patrol car and again berated Mr. Ward, believing that Mr. Ward was about to launch a terrorist-type attack. Officer Albaugh smelled alcohol in the bottle. A PBT was used to conduct a fume test, and it confirmed the presence of alcohol. MBCV

57:50. Officer Albaugh did not keep a sample of the liquid for further analysis. The liquid in the bottle was dumped out in the snow.

Mr. Ward was taken to the Gratiot County Jail and charged with state charges of carrying a concealed weapon and Driving a Motor Vehicle without car insurance.   When he arrived in court for his first court appearance, he was informed that those charges were being dismissed, because the U.S. Government was prosecuting him.

The car that Mr. Ward was driving was released from the impound lot on February 5, 2026. Mr. Ward and his stepfather, Michael Shipley, have examined the car and the taillights. The taillights were working the night that Mr. Ward was arrested and have continued to work since the car was released. Attached hereto is an Affidavit signed by Mr. Shipley attesting to that fact.

The actions of Alma patrol officers Malek and Albaugh violated Tex Ward's Fourth Amendment rights to be free from unlawful search and seizure. There was no probable cause to pull Mr. Ward's vehicle over. No independent evidence confirms Officer Malek's contention that Mr. Ward's taillights weren't working. The facts establish that the taillights

11

were working that evening. At a minimum, an evidentiary hearing should be conducted to fully address the legality of the initial stop.

Further, even if this Court finds probable cause to support Mr. Ward's initial stop, the Alma police officers violated Mr. Ward's Fourth Amendment protections in searching his car. Mr. Ward did not consent to the search. He was arrested on the traffic misdemeanor offense of driving without proper insurance. There was no reason to believe further evidence of that crime was in the vehicle. Every bag and backpack found in both the passenger compartment and trunk was emptied and rifled through. The Alma police officers violated Mr. Ward's Fourth Amendment protections.

Nor can the officers excuse their actions by claiming they were conducting a valid inventory search. Their actions violated the Alma Police Department's Inventory Policy for impounded vehicles. Tex Ward requests that this Honorable Court suppress the evidence against him and dismiss this case. Alternatively, he requests that this Court schedule a hearing to fully develop the record.

## Argument

## The Government cannot justify the warrantless seizure of Tex Ward and the subsequent search of his vehicle.

The Fourth Amendment guarantees that the right "of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the person or thing to be seized."

A search or seizure without a warrant is therefore presumptively invalid. *Coolidge v New Hampshire,* 403 U.S. 443 (1971). It is a "cardinal principle that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *Acevedo v California,* 500 U.S. 565, 580 (1991) (quoting *Mincey v Arizona,* 437 U.S. 385, 390 (1978). The government has the burden of showing that a warrantless search is reasonable. *United States v Haynes,* 301 F.3d 669, 667 (6th Cir. 2002), citing *United States v Pollard,* 215 F.3d 643, 648 (6th Cir. 2000).

Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a "seizure" of "persons" within the meaning of this provision. *Whren v United States,* 116 S.Ct. 1769, 1772 (1996); see *Delaware v Prouse,* 440 U.S. 648, 653, (1979); *United States v Martinez-Fuerte,* 428 U.S. 543, 556 (1976); *United States v Brignoni-Ponce,* 422 U.S. 873, 878 (1975). An automobile stop is thus subject to the constitutional imperative that it not be "unreasonable" under the circumstances. As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred. See *Prouse, supra.* at 659; *Pennsylvania v Mimms,* 434 U.S. 106, 109 (1977) (*per curiam*).

## No probable cause existed to stop Tex Ward's car

Officer Malek told Mr. Ward that he pulled him over because his taillights were out. Surprised, Mr. Ward wanted to see the taillights. Officer Malek refused to let Mr. Ward look at the back of the car, telling him "You can take my word for it." MBCV 1:24.

The Alma police department squad cars are not equipped with video cameras. The alleged observation of Mr. Ward's car with no taillights is

not supported by objective evidence.  Officer Malek refused to let Mr. Ward look at the lights.  Prior to being pulled over by Officer Malek, Mr. Ward had dinner with his mother, Sherrie Shipley, and his stepfather, Michael Shipley. As the cars left the parking lot of the restaurant, Mr. Shipley was driving behind Mr. Ward and saw that the taillights were working. The taillights were working on February 5, 2026 and have worked continuously since the night of his arrest. Mr. Ward 's initial stop is not supported by probable cause. All evidence seized against him should be suppressed and this case dismissed.[3]

### Officer Malek exceeded the scope of the vehicle search for a traffic violation because he was not conducting a valid search incident to an arrest.

Police may search an individual as an incident to his arrest, including the area "immediately" surrounding him. *Chimel v California,* 395 U.S. 752 (1969). It is the arrest that justifies the search. *Id.* The rationale of the search incident to arrest exception to the warrant requirement is that it is justified by concerns for officer safety and preservation of evidence. *Id.* at 763.

---

[3] Attached hereto as Exhibit A is a signed affidavit of Michael Shipley.

In *New York v Belton,* 453 U.S. 454 (1981), the Court expanded the scope of *Chimel.* In *Belton,* the Court specified that police may search the entire interior passenger compartment of a vehicle, as well as containers therein, as a contemporaneous search because it is within the subject's immediate control. Justice Scalia's and Justice Ginsburg's concurring opinions in *Thornton v United States,* 541 U.S. 615 (2004), noted that *Belton* searches are limited to where it is "reasonable to believe" evidence "relevant to the crime of arrest" will be found.   Justice Scalia was concerned that the majority's reasoning in *Thornton* was too broad:

> ' "As one judge has put it: "[I]n our search for clarity, we have now abandoned our constitutional moorings and floated to a place where the law approves of purely exploratory searches of vehicles during which officers with no definite objective or reason for the search are allowed to rummage around in a car to see what they might find." *McLaughlin, supra,* at 894 (Trott, J., concurring). I agree entirely with that assessment.'" 541 U.S. 629.

Justice Scalia's concerns were finally addressed by the Court in *Arizona v Gant,* 556 U.S. 332 (2009).   In *Gant,* the Supreme Court limited the parameters of *Belton. Gant* authorized a warrantless search incident to an arrest to protect officers and prevent the destruction of

16

evidence when an arrestee is unsecured. 556 U.S. 332. However, the *Gant* Court held that *Belton* does not authorize a vehicle to be searched after a recent occupant's arrest, when the arrestee has been secured and cannot access the vehicle's interior. *Id.* The Court reasoned that if there is no possibility that an arrestee could reach into the area the officers wish to search, then justification for the search is absent. *Id.* at 343-344.

As such, police may search the passenger compartment of a vehicle incident to a recent occupant's arrest *only if* it is reasonable to believe that the arrestee might access the vehicle at the time of the search or if the vehicle contains evidence relevant to the offense of the arrest. *Id.* A car search incident to an arrest is only justified on these two grounds.

In the context of arrests premised upon traffic violations, such as Mr. Ward's misdemeanor arrest for no valid insurance, the *Gant* Court has expressly held that "when a recent occupant is arrested for a traffic offense, there will be no reasonable basis to believe the vehicle contains relevant evidence." *Gant,* 556 U.S. 343-344; citing *Atwater v Lago Vista,* 532 U.S. 318, 324 (2001); *Knowles v Iowa,* 525 U.S. 113, 118 (1998).  The reasoning behind this rule is that traffic infractions are not the type of offenses that would yield physical evidence. *Id.*

In the instant case, the Government may argue that Mr. Ward volunteered the information that his gun was under the front seat. He never consented to a search of his car. Officer Malek never asked him for consent; he just continually questioned him (without *Miranda* warnings) about the car and why he was driving through the town of Alma.

Even assuming Mr. Ward lawfully volunteered the information about the gun, the subsequent search of the passenger compartment was unauthorized and excessive. Officer Albaugh dumped out the contents of all bags, backpacks and containers found in the passenger compartment. In the words of Justice Scalia, Officer Albaugh engaged in a "purely exploratory search" rummaging through the car to "see what he might find." All evidence seized should be suppressed.

Despite the unconstitutional search of the entire passenger compartment, while Mr. Ward was handcuffed and in the back of the patrol car, under arrest for a traffic violation, the search proceeded to the locked trunk. No probable cause existed to open the locked trunk, let alone empty and rifle through the bags and backpacks.  Mr. Ward never gave consent to search his vehicle. The trunk is separate from the

18

passenger compartment. The officers violated the Fourth Amendment and the parameters set forth in *Gant*. The evidence should be suppressed.

### The Alma police officers cannot claim the search of the trunk was part of an inventory search because their actions violated the Alma police department's inventory policy.

The actions of the Alma police officers cannot be excused by a purported inventory search. As soon as Mr. Ward was handcuffed, Officer Malek intended to impound the car. Attached as Exhibit B is the Alma Police Department's Policy on Towing Impounded Vehicles. Officer Malek violated multiple parts of the policy the night Mr. Ward was arrested.

First, as soon as Mr. Ward was placed under arrest, he asked to call his stepfather to come and get the car. Officer Malek refused, stating that the car had no valid insurance and could not legally be driven. Mr. Ward then stated that his stepfather could have the car towed to his home. Again, Officer Malek refused, violating section 14.7.6, which specifies that an owner or driver of an impounded vehicle may select a towing company when circumstances permit.

But most importantly, Officer Malek violated the specific direction of 14.7.4. That provision states:

- **Evidence:** when necessary to preserve or obtain evidence and it is immediately apparent that the vehicle is evidence, or the member has probable cause to believe evidence will be found in the vehicle. Members shall secure a search warrant before examining any vehicle towed under this section.

Any evidence found in Mr. Ward's backpack and bags found in the trunk must be suppressed. The search of the trunk and the bags found therein violated Mr. Ward's Fourth Amendment protections and U.S. Supreme Court precedent. Officer Malek's actions violated his own department's policy. He told Mr. Ward the car was used in the commission of a crime. MBCV 17:01. He was looking for criminal evidence from the moment he handcuffed Mr. Ward. Multiple times he discussed the various charges that could be brought. MBCV 11:10-11:34; 29:40-29:50. Malek's zeal exceeded his lawful authority. He violated his department's inventory policy. All evidence seized should be suppressed and the case dismissed.

## Conclusion and Relief Requested

The actions of the Alma police officers on February 4, 2026, were unconstitutional and in violation of the department's own policies. The officers engaged in a lawless exploration of every bag and backpack found in Tex Ward's car. All evidence seized should be suppressed and the case dismissed. Alternatively, an evidentiary hearing should be scheduled so that a full and complete record can be made.

Respectfully Submitted,

/s/Patricia A. Maceroni
Patricia A. Maceroni (P44124)
Federal Community Defender Office
111 E. Court Street, Suite L-100
Flint, MI 48502
Dated: June 9, 2026      patricia_maceroni@fd.org

## CERTIFICATE OF SERVICE

I certify that on June 9, 2026, I electronically filed the foregoing Brief and Motion to Suppress with the Clerk of the Court using the ECF system, which will send notification to opposing counsel of record.

s/ *Patricia A. Maceroni*

21