UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,                 Case #26-20165

    Plaintiff,                                   Hon. David M. Lawson

-vs-

TEX WARD,

    Defendant.

_____/

## MOTION TO SUPPRESS STATEMENTS OBTAINED IN VIOLATION OF *MIRANDA*

NOW COMES Defendant Tex Ward, by and through his attorney, Patricia A. Maceroni, and pursuant to Fed. R. Crim. P. 12(b)(3)(C) and the Fifth, Sixth and Fourteenth Amendments of the United States Constitution, moves to suppress all statements made to the Alma police officers on the night he was arrested. In support thereof, Mr. Ward states:

1. Mr. Ward was handcuffed and placed under arrest for the misdemeanor traffic violation of driving without proof of valid

1

insurance, contrary to MCL 257.328. He was handcuffed and placed in the backseat of the police car.

2. Mr. Ward was not advised of his *Miranda* rights before Officer Malek of the Alma police department started interrogating him. Malek Body Cam Video (MBCV) 10:05.

3. After the passenger compartment of Mr. Ward's vehicle was illegally searched, Officer Malek decided to advise Mr. Ward of his *Miranda* protections. Neither Officer Malek nor any of the officers on the scene had a *Miranda* advice card. Officer Malek had to Google *"Miranda."* He read off the search results to Mr. Ward. MBCV 12:26.

4. Mr. Ward was not adequately advised of his right to remain silent nor any of the other protections mandated by *Miranda*. He did not voluntarily waive those rights. All statements made by him on February 4, 2025, should be suppressed.

5. Pursuant to local court rule, undersigned counsel contacted opposing counsel for concurrence in the relief requested. Opposing counsel does not concur.

Given the failure to advise Tex Ward of his *Miranda* rights before his interrogation began, and the invalid rights given to him subsequently, the statements he made to the Alma police officers were given in violation of his Fifth and Fourteenth Amendments to remain silent and his Sixth Amendment right to counsel. Tex Ward respectfully requests this Honorable Court to suppress his statements. Alternatively, he asks this Court to schedule an evidentiary hearing so that a full record can be made.

Respectfully Submitted,

/S/Patricia A. Maceroni
Patricia A. Maceroni (P44124)
Attorney for Tex Ward
111 E. Court Street, Ste. L-100
Flint, MI 48502
Dated: June 9, 2026      Patricia_maceroni@fd.org

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,                    Case #26-20165

    Plaintiff,                               Hon. David Lawson

-vs-

TEX WARD,

    Defendant.

_____/

## BRIEF IN SUPPORT OF MOTION TO SUPPRESS STATEMENTS

### Statement of Facts

On February 4, 2026, Tex Ward was driving through the city of Alma, heading to his mother and stepfather's home in Perrinton, Michigan. Tex had just moved in with his mother after losing his job and home in Port Huron, Michigan. His car had an assortment of shopping bags with toys for his son Grayson, who had just had his fourth birthday. In the back seat were backpacks with personal items and boxes of household materials that he was taking to Perrinton.

Suddenly, he noticed flashing lights behind him. Tex had never been stopped by the police before. His first thought was the car was chasing someone else. He couldn't understand why he was being pulled over. Tex pulled into the parking lot of the gas station. Immediately, he started looking for the car's registration and proof of insurance.

Officer Ethan Malek of the Alma Police Department approached the car. He told Mr. Ward that his taillights weren't working. Mr. Ward was surprised and asked to check them. Officer Malek told him to stay in the car; he could not check the taillights. The lights weren't working because "I can tell you they're not on…you can take my word for it." MBCV at 1:04.

Five minutes later, Mr. Ward was under arrest for operating a motor vehicle with no proof of insurance, a misdemeanor under Michigan Law. MCLA 257.328. He was searched, handcuffed and marched back to Officer Malek's patrol car, where he was searched again. Mr. Ward shivered in the cold, handcuffed. He repeatedly stated he was scared, with "three guys around me with guns." He didn't understand what was going on. Officer Malek told him "Once you were in handcuffs, you're

5

under arrest for operating without insurance, which is why you're in handcuffs." MBCV 8:28; 8:54.

Officer Malek did not read Mr. Ward his *Miranda* rights. After placing Mr. Ward in the backseat of the patrol car, he questioned him about what might be in the car. MBCV 10:05. Mr. Ward told him that there was a legal amount of marijuana that he had purchased in his backpack. The backpack was on the floor in the back seat. Mr. Ward also told Officer Malek that his registered firearm was under the front seat. MBCV 10:14.

Officer Malek walked back to Mr. Ward's vehicle and found the registered firearm under the driver's front seat. He asked his co-workers for a *Miranda* warnings card, as he had not been given one by the Alma Police Department. None of the officers had one. Officer Malek looked "it up on Goggle." He told his co-workers to "toss it" referring to Mr. Ward's car and walked back to his patrol car. MBCV 12:26.

At the 14:21 mark of the video, Officer Malek begins to read the Goggled *Miranda* rights. He reads through the rights as follows:

> "You have the right to remain silent. Anything you say can and will be used against you in a court of law. You have the right to talk to a lawyer and have him or her present with you while you're being questioned. If you cannot afford to hire a lawyer, one will be appointed to represent you before any questionings. If you wish, you can decide at any time to exercise these rights and not answer questions or make any statements."

Officer Malek asked Mr. Ward if he understood the rights. Mr. Ward's response is extremely faint and not clear on the audio. Officer Malek then says "Ok." Officer Malek failed to ask Mr. Ward whether he wanted to waive the rights before proceeding with the interrogation.

Officer Malek questioned Mr. Ward about the registered firearm and whether Mr. Ward has a CP license. Mr. Ward admitted he did not. Officer Malek returned to Mr. Ward's car. The officers tossing his vehicle found white powder residue, in a container in a backpack, which they assumed was methamphetamine. At 20:30 on the body cam video, Officer Malek asked Mr. Ward when was the last time he used meth?

7

That interrogation is interrupted, but Officer Malek returned to the patrol car at the 26:00 minute mark and continued questioning Mr. Ward. Mr. Ward denied ever using meth, explaining that the powder may be left over Adderall from when he worked the midnight shift. Officer Malek belittled Mr. Ward stating, "you think that's the viable response that I'm going to believe?"

Officer Albaugh has proceeded to open the locked trunk, and is going through all of the bags, boxes and backpacks that he sees. In a backpack, located in the back of the trunk, he finds a Captain Morgan's bottle, festooned with fabric, containing a clear liquid, that tests positive for alcohol. Officer Malek begins yet another interrogation at 31:40. Mr. Ward admitted festooning the bottle with fabric, saying he "did it for fun…I didn't make it to, like, do anything with it." MBCV at 31:57.

Officer Malek returned to Mr. Ward's vehicle. Officer Albaugh has discovered additional items in the trunk, including a box with binoculars, rope and small metal prongs, which they believe to be tire spikes. The consensus is Mr. Ward is a wannabe terrorist. MBCV 40:07; 45:26.

At that point, Officer Malek asks Officer Albaugh if he "wants to take a crack" at interviewing Mr. Ward. MBCV 45:58. Officer Albaugh starts berating Mr. Ward; insisting that "typically people who do that sort of stuff also start with no criminal record." ABCV at 43:28. Mr. Ward again repeats he wasn't going to do anything. Officer Albaugh keeps insisting he's "preparing for something." ABCV at 43:34. Albaugh asked him about the flyers found in the backpack in the trunk of the car, wanting to know what type of "political group" Mr. Ward either runs or is a member of. Mr. Ward, confused, tells him the flyers are from a protest a couple of years ago. Albaugh pressed Mr. Ward on "what type of protest? What are you into? Or not into?" ABCV at 44:11-44:33.

Mr. Ward responded that he's against governmental corruption. Officer Albaugh continued to berate and harass Mr. Ward about "a specific plan" even though Mr. Ward insisted he has no plan. Exhausted and terrified, Mr. Ward asked, "should I get a lawyer at this point? I'm scared." ABCV 44:34-45:59.

Officer Albaugh continued with questioning. Another officer, off camera, stated "if you want a lawyer, stop talking." ABCV 46:07. Mr. Ward stopped talking.

9

All the statements made by Tex Ward from the time he was handcuffed should be suppressed. Officer Malek began questioning him before he was given his *Miranda* rights. The Goggled *Miranda* warnings may have correctly listed the rights, but Mr. Ward did not intelligently or voluntarily waive those rights. Officer Malek failed to obtain a valid waiver. Tex Ward respectfully requests that this Honorable Court grant his motion and suppress his statements. Alternatively, he requests that this Honorable Court schedule an evidentiary hearing so that a full record may be made concerning this issue.

## Argument

The statements made by Tex Ward to the Alma police officers must be suppressed because they were obtained in violation of the Fifth, Sixth and Fourteenth Amendments. U.S. Const. Amends. V, VI and XIV. Where there is a "custodial interrogation" the absence of a *Miranda* warning will preclude use of the suspect's statements. *Miranda v Arizona,* 384 U.S. 436, 445, 466 (1966); *Illinois v Perkins,* 496 U.S. 292, 297 (1990).

Tex Ward was in custody. Officer Malek began his interrogation immediately after placing him under arrest. Interrogation is questioning

10

initiated by the police. *Rhode Island v Innis,* 446 U.S. 291 (1980). As soon as Officer Malek informed Mr. Ward he was under arrest for the misdemeanor traffic offense, he began interrogating Mr. Ward about the contents of his car. MBCV 10:03.

Mr. Ward's statement about the gun should be suppressed. He made it with no *Miranda* warnings given. Officer Malek then searched the passenger compartment and found the gun. At that point, Officer Malek decided to advise Mr. Ward of his *Miranda* protections. Neither Officer Malek, nor any of the officers on scene, had a *Miranda* rights advise form. Officer Malek had to Goggle them.

The Government may argue that given the Sixth Circuit's recent decision in *United States v Guerrero,* 168 F.4th 454 (2026), Officer Malek's questioning was proper and not precluded by the absence of *Miranda* warnings. The facts in *Guerrero* are completely different from Mr. Ward's interrogation. Mr. Guerrero was under investigation by the DEA and the Nashville police department as a co-conspirator in a drug trafficking organization. Following a grand jury indictment naming him in eight criminal counts, an arrest warrant was issued. 168 F.4th at 458.

The DEA agents arrested Mr. Guerrero at his home. He was partially clothed. After handcuffing him, the agents went to get him clothes from his closet. They asked Mr. Guerrero whether the closet contained any weapons or other items that could hurt them. Mr. Guerrero told them there were two pistols in the closet. *Id.*

Mr. Guerrero was taken to the DEA office. He was Mirandized and proceeded to speak with the agents. Prior to trial, he filed several pre-trial motions, one challenging the statements he gave to the agents at his home about the pistols. Mr. Guerrero argued that his pre-*Miranda* interactions with law enforcement was "inherently coercive" because agents arrested him at home early in the morning, did not Mirandize him and questioned him in English, not his native language. He moved to suppress the statements concerning the guns in the closet. 168 F.4th at 461.

The Sixth Circuit found no constitutional violation, because none of the statements made before Mr. Guerrero was given his *Miranda* warnings were introduced at trial. As none of those pre-*Miranda* statements were introduced against Mr. Guerrero, there was no basis for

a constitutional violation. *Id.,* citing *United States v Patane,* 542 U.S. 630, 641 (2004).

In the instant case, it is highly likely that the Government will seek to introduce Mr. Ward's pre-*Miranda* statement. Arrested on a misdemeanor traffic violation, the search of Mr. Ward's passenger compartment was illegal and as argued in Mr. Ward's companion motion to suppress, a violation of his Fourth Amendment protections. To circumvent the unconstitutional search of the car, the Government may argue that his statement was the legal basis allowing Officer Malek to search the vehicle. With no *Miranda* warnings being given, Mr. Ward's statement must be suppressed.

### The *Miranda* rights given were inadequate and Mr. Ward did not intelligently or validly waive those protections.

After the illegal search of Mr. Ward's passenger compartment, Officer Malek decided to give Mr. Ward his *Miranda* warnings and continue his interrogation. In *Miranda,* the U.S. Supreme Court mandated that "the accused must be adequately and effectively apprised of his rights and the exercise of those rights must be fully honored." 384 U.S. at 467. Failure to go give the prescribed warnings and obtain a

waiver of rights before custodial questioning generally requires exclusion of any statements obtained. *Missouri v Seibert,* 124 S. Ct. 2601, 2608 (2004).

The burden of showing admissibility rests, of course, on the prosecution. *Brown v Illinois,* 422 U.S. 590, 604 (1975). The prosecution bears the burden of proving, at least by a preponderance of the evidence, the *Miranda* waiver. *Colorado v Connelly,* 479 U.S. 157, 169 (1986) and the voluntariness of the confession. *Lego v Twomey,* 404 U.S. 477, 489 (1972).

Officer Malek started reciting the Goggled *Miranda* warnings at the 14:21 mark of the body cam video. He never asked Mr. Ward if he waived those rights and wanted to speak to him. Mr. Ward never verbally waived the rights read to him by Officer Malek. Mr. Ward did not sign a waiver of his right to remain silent. The failure of Officer Malek to obtain a knowing and voluntary waiver from Mr. Ward should result in a suppression of all statements subsequently made.

The first post-*Miranda* discussion concerned the registered firearm and why Mr. Ward did not possess a CP license. Multiple times over the

next 40 minutes Mr. Ward was questioned by the Alma police officers. At the 20:30 mark, Officer Malek came back to Mr. Ward, demanding to know "when was the last time you used meth?" Officer Albaugh, tossing Mr. Ward's car and every container in it, had found what appeared to be white powder residue, in a container, in one of his backpacks. The logical conclusion was, of course, the powder was methamphetamine.

Mr. Ward vehemently denied ever using meth. Officer Malek went and grabbed the white powder residue and at the 26:00 video mark the questioning began yet again. Again, Mr. Ward denied using meth. Officer Malek responded "you think that's the viable response I'm going to believe?...You've already lied multiple times." MBCV 26:38-26:45.

Officer Malek walked back to Mr. Ward's vehicle to discuss the exact charges to file against Mr. Ward. Officer Albaugh continued to toss the vehicle, this time going into the locked trunk and the containers in the trunk. After rifling through bags and boxes, in the back of the trunk he pulled out a backpack. Within the backpack, he found a Captain Morgan's bottle, containing a clear liquid. The bottle had fabric wrapped around it. The officers believed it was a Molotov cocktail. MBCV 30:47.

After Officer Albaugh found the Captain Morgan's bottle, festooned with fabric, containing a clear liquid, that tested positive for alcohol, Officer Malek began yet another interrogation at 31:40. Mr. Ward admitted to festooning the bottle with fabric, saying he "did it for fun...I didn't make it to, like, do anything with it." MBCV at 31:57.

Officer Albaugh walked over to Mr. Ward and started berating him; insisting that "typically people who do that sort of stuff also start with no criminal record." ABCV at 43:28 Mr. Ward again stated he wasn't going to do anything. Officer Albaugh kept insisting he's "preparing for something." ABCV at 43:34.

Officer Albaugh asked him about the flyers he found, wanting to know what type of "political group" Mr. Ward either runs or is a member of. Mr. Ward, confused, told him the flyers were from a protest a couple of years ago. Albaugh pressed Mr. Ward on "what type of protest? What are you into? Or not into?" ABCV at 44:11-44:33.

Mr. Ward informed Officer Albaugh he's against governmental corruption. Officer Albaugh continued to berate and harass Mr. Ward about "a specific plan" even though Mr. Ward insisted he has no plan.

16

Exhausted and frightened, Mr. Ward asked, "should I get a lawyer at this point? I'm scared." ABCV 44:34-45:59.

Officer Albaugh continued questioning him. Suddenly, another officer, off camera, said "if you want a lawyer, stop talking." ABCV 46:07. Mr. Ward stopped talking.

None of Mr. Ward's statements are constitutionally permissible. He never voluntarily waived his Miranda rights. His statements were coerced. The Fifth Amendment provides that "No person…shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend V. Statements made by a defendant in response to custodial police interrogation are not admissible unless the defendant has first been apprised of his *Miranda* rights and has validly waived them. See *United States v Cole*, 315 F.3d 633, 636 (6th Cir. 2003); *United States v Salvo*, 133 F.3d 943, 948 (6th Cir. 1998).

A valid waiver is voluntary, knowing, and intelligent. *United States v Al-Cholan*, 610 F.3d 945, 954 (6th Cir. 2010). Waiver is voluntary when "it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran v Burbine*, 475 U.S. 412, 421 (1986). It is intelligent when it is "made with a full awareness of both the

17

nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* "Only if the 'totality of the circumstances surrounding the [interrogation]' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Machacek v Hofbauer*, 213 F.3d 947, 954 (6th Cir. 2000) (quoting *Moran*, 475 U.S. at 421).

Officer Malek never asked Mr. Ward if he wanted to waive his right to remain silent or to consult an attorney. No waiver form was signed; no rights form was initialed. Reciting the rights is only part of a valid *Miranda* waiver. The individual must understand the rights exist until he chooses to waive them. Mr. Ward never validly waived his rights.

In looking at the totality of the circumstances surrounding Mr. Ward's arrest, Officer Malek continually deceived and intimidated Mr. Ward. He refused to allow him to look at the taillights immediately after pulling him over, arrogantly stating "they're not working because I told you they aren't."

Mr. Ward had never been pulled over by the police. He had never been patted down. He had never been handcuffed. His confusion and fear are clear on the body cam videos. Mr. Ward can't understand why he was

18

placed under arrest, when Officer Malek had told him just seconds before that he was not under arrest.

Mr. Ward told the officers he was scared. He was intimidated by the armed officers surrounding him, in the dark and snow. Mr. Ward never validly waived his *Miranda* rights. His first statement after Officer Malek says "Ok" is "May I have my wallet, my phone?" so he can call his mother. MBCV 14:41.

The continued questioning after the *Miranda* rights are read is unconstitutional. Mr. Ward's statements were not knowingly and voluntarily made. His statements were coerced. Officer Malek belittled Mr. Ward's answers. His tone and attitude became more hostile each time he returned to the patrol car. Officer Albaugh questioned Mr. Ward about his political activity and accused him of planning a terrorist attack. Under the circumstances, Mr. Ward never validly or voluntarily waived his right to remain silent. He was subjected to coercive interrogation while under arrest. All the statements that he made to law enforcement on February 4, 2026 were made in violation of his constitutional protections and should be suppressed.

## Conclusion and Relief Requested

Based on the above, Tex Ward respectfully requests that this Honorable Court enter an Order suppressing the statements made by him during his interrogations with the Alma police officers. Alternatively, schedule this matter for an evidentiary hearing so that a testimonial record can be made preserving this issue.

Respectfully Submitted,

/s/Patricia A. Maceroni
Patricia A. Maceroni (P44124)
Federal Community Defender Office
111 E. Court Street, Suite L-100
Flint, MI 48502
Dated: June 9, 2026          patricia_maceroni@fd.org

## CERTIFICATE OF SERVICE

I certify that on June 9, 2026, I electronically filed the foregoing Brief and Motion to Suppress with the Clerk of the Court using the ECF system, which will send notification to opposing counsel of record.

s/ *Patricia A. Maceroni*