UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

        CASE NO: 26-cr-20165

        Plaintiff,

v.        HON. DAVID M. LAWSON
        United States District Judge

TEX WARD,

        Defendant.

_____

**GOVERNMENT'S COMBINED RESPONSE TO DEFENDANT'S
MOTIONS TO SUPPRESS SEARCH AND STATEMENTS**

_____

On June 9, 2026, Defendant Tex Ward filed a motion to suppress warrantless search (ECF No. 22, PageID.54) and a motion to suppress statements obtained in violation of *Miranda*. (ECF No. 23, PageID.80). For the reasons stated in the accompanying brief, Defendant's motions should be denied.

        Respectfully submitted,
        JEROME F. GORGON, JR.
        United States Attorney

Dated: July 10, 2026        s/WILLIAM ORR
        Assistant United States Attorney
        101 First Street, Suite 200
        Bay City, Michigan 48708
        Phone: (989) 895-5712
        william.orr@usdoj.gov
        Texas State Bar No. 2410230

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

                    CASE NO: 26-cr-20165

        Plaintiff,

v.                     HON. DAVID M. LAWSON
                     United States District Judge

TEX WARD,

        Defendant.

_____

**GOVERNMENT'S BRIEF IN SUPPORT OF COMBINED RESPONSE TO DEFENDANT'S MOTIONS TO SUPPRESS SEARCH AND STATEMENTS**

_____

On June 9, 2026, Defendant Tex Ward filed a motion to suppress warrantless search (ECF No. 22, PageID.54) and a motion to suppress statements obtained in violation of *Miranda*. (ECF No. 23, PageID.80). The officers lawfully stopped and searched Ward's vehicle and did not violate his *Miranda* rights. Accordingly, Ward's motions should be denied.

## I.    PROCEDURAL BACKGROUND

On March 25, 2026, the government charged Ward in an indictment with one count of possession of an unregistered destructive device and one count of possession of a firearm unidentified by serial number. (ECF No. 1, PageID.15-16). On April 29, 2026, the Court entered a scheduling order setting a jury trial date of

August 11, 2026, and requiring motions to be filed by June 9, 2026. (ECF No. 21, PageID.52-53). On June 9, 2026, defendant filed a motion to suppress the search (ECF No. 22, PageID.54) and a motion to suppress statements (ECF No. 23, PageID.80).

## II.    FACTUAL BACKGROUND

On February 4, 2026, at approximately 8:20 p.m., Officer Ethan Malek saw a blue Ford Fusion driving without taillights on Wright Avenue near Heather Lane in Alma, Michigan.  Officer Malek turned on his emergency lights and the vehicle continued driving.  Officer Malek saw the driver and lone occupant dip his body forward and the vehicle continued driving. Officer Malek then turned on his siren and the vehicle stopped in the parking lot of an Arco Gas station. Officer Malek approached the driver's window and identified the driver and sole occupant as Tex Ward. Ward opened the driver's door and got out of the car. Officer Malek observed a large folding knife in the door pocket, so he removed the knife, placed it on the car's hood, and told Ward to sit back in the car.  Officer Malek noted Ward appeared to straighten his leg and push it to the side when he sat back down as if trying to hide something that was under the seat.

Officer Malek asked Ward for his license and vehicle paperwork. Ward provided his driver's license and an insurance policy that expired on January 20,

3

2026.  Officer Malek noted the license plate expired as of January 10, 2026, as well. Officer Malek ran the insurance through LEIN for an electronic insurance verification, and it indicated the vehicle had no insurance. Officer Malek then placed Ward under arrest for driving without valid insurance. Officer Malek conducted a search of Ward's person before placing him in the back of his patrol car. While entering the patrol car, Ward voluntarily stated, not in response to any questioning, that he had some marijuana in a bag.  (Ex. 1: Ofc. Malek Body Cam Video at 9:44). Officer Malek then asked if there's anything in the car that is going to "cut, poke, stick, stab me" and Ward responded "No." (*Id.* at 10:02).  Officer Malek then asked if there was "anything that's illegal," and Ward said, "I have my firearm though." (*Id.* at 10:05).  Officer Malek then asked Ward if he has a concealed pistol license ("CPL") and Ward replied he does not. (*Id.* at 10:33).  Officer Malek then recovered the firearm from under the seat of the vehicle. (*Id.* at 11:02).

Officer Malek then asked the other officer and his field training officer for a *Miranda* card, and both responded they did not have one. (*Id.* at 11:34-12:02). Officer Malek looked up *Miranda* warnings on the internet and read the following warnings to Ward:

> "You have the right to remain silent. Anything you say can and will be used against you in a court of law. You have the right to talk to a lawyer and have him or her present with you while you are being questioned. If you cannot afford to hire a lawyer, one will be appointed to represent

you before any questionings if you wish. You can decide at any time to exercise these rights and not answer questions or make any statements. Do you understand these rights as I have explained them to you?" *Id.* at 14:17-14:39

Ward replied yes.[1] (*Id.* at 14:40). Ward then made statements about the gun and admitted to putting it under the seat prior to driving. (*Id.* at 14:55-16:30). Officer Malek told Ward he is going to be arrested for carrying a concealed weapon and no insurance and the car will be towed. (*Id.* at 16:30-16:45). Ward then asked if he could have a private tow come or could he have someone come pick it up. (*Id.* at 16:45-16:55). Officer Malek advised that because it does not have insurance, it has to be towed by their tow truck. (*Id.* at 16:55).

Officer Chase Albaugh searched the vehicle while Officer Malek talked to Ward and discussed the case with his field training officer. In the trunk, Officer Albaugh found a Molotov cocktail made from a Captain Morgan bottle in a backpack. Officer Malek asked Ward about the Molotov cocktail and Ward said he made it for fun. (*Id.* at 31:39-31:52). Ward told Officer Malek he is a "prepper" and has a whole survival kit in his car. (*Id.* at 32:17-

---

[1] In his motion, Ward argues his response is faint and not clear but that is simply not true. It is clear from the audio that Ward answers yes when asked if he understood the rights as they were explained to him.

32:25).  Officer Albaugh also questioned Ward post-*Miranda* and asked him some questions about what he was doing that night. Ward indicated life was "shitty" and he knew what it looked like. Ward said he is preparing in case things go bad.  Officer Albaugh asked him about flyers found in his car and Ward said they were from a few years ago and he is against corruption in the government.  During this exchange, Ward asked Officer Albaugh, "do I need a lawyer at this point." Ward then said he is "scared." (Ex. 2: Officer Albaugh Body Camera Video at 45:49). However, Ward continued talking and said he had the things for a while in his garage.  Another officer then said, "if you think you want a lawyer then stop talking."  (*Id.* at 46:00). The officer then said he is trying to protect Ward's rights but if Ward thinks he "does not want a lawyer you can talk all you want." (*Id.* at 46:10).  Officer Albaugh then advised Ward it is up to him if he keeps talking and asks Ward what he wants. Ward stated, "I don't know what I want because I want to go home." (*Id.* at 46:31).  Officer Albaugh then stopped the conversation because Ward was undecided.

## III.   TRAFFIC STOP AND SEARCH

### A.   Traffic Stop

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no [w]arrants shall issue, but upon probable cause, supported by [o]ath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. The Sixth Circuit "has developed two separate tests to determine the constitutional validity of vehicle stops: an officer must have probable cause to make a stop for a civil infraction, and reasonable suspicion of an ongoing crime to make a stop for a criminal violation." *United States v. Collazo*, 818 F.3d 247, 253–54, 258 (6th Cir. 2016) (citation omitted) (noting that an officer does not violate the Fourth Amendment by "inspecting the automobile's registration and proof of insurance"). Michigan law requires that a "motor vehicle . . . shall be equipped with at least 1 rear lamp mounted on the rear, which, when lighted as required by this act, shall emit a red light plainly visible from a distance of 500 feet to the rear." Michigan Compiled Law § 257.686. Michigan law requires those lights be illuminated "any time from a half hour after sunset to a half hour before sunrise and at any other time when there is not sufficient light to render clearly discernible persons and vehicles on the highway at a distance of 500 feet." MCL § 257.684.

Here, Officer Malek stopped Ward's car because his taillights were not on, as required, at approximately 8:20 p.m. There is no evidence to contradict this assertion. Ward provides a sworn statement from Michael Shipley, who is Ward's

7

stepfather and clearly has bias due to his relationship. (ECF No. 22-2, PageID.76). In this statement, Shipley states he had dinner with Ward the night he was arrested and noticed the taillights were working and several days after recovering the vehicle from the impound lot he checked the wiring and the lights worked fine. (ECF No. 22-2, PageID.76). None of these facts necessarily contradict Officer Malek's basis for stopping Ward's vehicle. Shipley was not driving behind Ward when he was stopped by the police and admitted he did not check the taillights immediately after getting the car out of the impound lot. Accordingly, Officer Malek had probable cause to stop Ward's vehicle for not having his taillights illuminated.

### B.      Search of the Vehicle

Ward would have the Court believe that the officers searched the car incident to arrest for driving without insurance.  (ECF No. 22, PageID.68-72). However, this argument is not supported by any of the evidence.  After speaking with Ward, Officer Malek learned the vehicle did not have valid insurance. Michigan Law requires vehicles to have valid insurance and someone who operates a vehicle without it is subject to misdemeanor penalties of up to a year incarceration. MCL § 500.3102. Officer Malek decided to have the vehicle towed because it did not have insurance. The Fourth Amendment permits impoundment decisions and inventory searches that are "objectively justifiable, moreover, regardless of an officer's subjective intent."

8

*See Whren v. United States*, 517 U.S. 806, 812 (1996). Courts in this district have previously held that "[w]hen a vehicle lacks insurance police officers can impound it and have it inventory searched to safeguard the property inside the vehicle." *United States v. Lawrence*, 425 F. Supp.3d 828, 833 (E.D. Mich 2019) (citing *Mongo v. City of Detroit*, 2018 WL 1168936 at *3-4 (E.D. Mich. March 6, 2018); *Redmond v. Sanders*, 858 F. Supp.2d 809, 820-21 (E.D Mich. 2012)). Here, the vehicle could not be legally driven due to the lack of insurance and the decision to impound the vehicle cannot be objectively questioned.

Instead, Ward tries to obfuscate the issue by trying to claim Officer Malek violated department policy. Officer Malek did no such thing. The section of policy Ward points to references MCL § 257.252d, which relates to the removal of vehicles from public or private property. (ECF No. 22-3, PageId.77). This section clearly relates to unoccupied and abandoned vehicles because the law has a provision that if the owner shows up before towing is complete the vehicle must be unhooked. MCL § 257.252d(2). This section of the policy appears to require officers to secure a warrant before examining a vehicle being impounded under MCL § 257.252d(1)(e), which is inapplicable to the situation here. *See* MCL § 257.252 (regarding theft and recovery of stolen vehicles). With a vehicle being towed for being driven with no insurance, Alma department policy and the law permit an

inventory search. *See* (Ex. 3: Alma Police Department Policy-Detentions and Seizures Page 8).

Additionally, Ward's statements provided further justification for the search. As outlined in section IV.A below, Ward gave a statement that he had a gun in the car to Officer Malek in response to a question attendant to the inventory search of the car.  Following up on this statement, Officer Malek asked Ward if he had a CPL, and Ward stated no. This gave Officer Malek probable cause that evidence of a firearms violation would be in the vehicle.  *See* MCL § 750.227(2). Under the automobile exception to the warrant requirement, a car may be searched without a warrant if there is probable cause to believe that the car contains contraband or evidence. *Carroll v. United States*, 267 U.S. 132, 153 (1925). "The scope of a warrantless search of an automobile . . . is not defined by the nature of the container in which the contraband is secreted." *United States v. Howton*, 260 F. App'x 813, 817 (6th Cir. 2008) (quoting *United States v. Ross*, 456 U.S. 798, 824 (1982)). "Rather, it is defined by the object of the search and the places in which there is probable cause to believe that [the contraband] may be found." *Id*.  Here, Officer Malek located the firearm under the driver's seat, which gave them probable cause to search for any other similar contraband. *See, id.* (citing *United States v. McGuire*, 957 F.2d 310, 314 (7th Cir. 1992)) (finding "troopers then had probable cause to

10

search for any other similar contraband" after finding open container of alcohol in a van). While searching the passenger compartment, Officer Albaugh found a backpack in the back seat that contained a pill bottle with suspected controlled substances inside it. (Ex. 2: Officer Albaugh Body Camera Video 11:56-13:50). This then provided probable cause for law enforcement to search for other potential evidence of controlled substance possession as well as weapons. Eventually, officers searched the trunk and found the Molotov cocktail that Ward faces charges for in the instant case. All of these items were lawfully found under the motor vehicle exception to the warrant requirement. Probable cause is not limited to the first civil infraction or crime known to officers. It can evolve as facts and evidence come to light as it did here.

Even if the Court suppresses Ward's statements about the firearm pre-*Miranda*, the search of the vehicle still survives due to the inevitable discovery doctrine. The inevitable discovery doctrine allows unlawfully obtained evidence to be admitted at trial if the government can prove by a preponderance that the evidence inevitably would have been acquired through lawful means. *Nix v. Williams*, 467 U.S. 471, 484-85 (1963). "For the inevitable discovery exception to apply it must be demonstrated that the evidence would have been acquired through lawful means had the government misconduct not occurred." *United States v. Kennedy*, 61 F.3d 494,

11

497 (6th Cir. 1995) (internal citations omitted). "The exception requires the district court to determine, viewing the affairs as they existed at the instant before the unlawful search, what would have happened had the unlawful search never occurred." *United States v. Eng*, 971 F.2d 854, 861 (2d Cir. 1992), *cert. denied*, 510 U.S. 1045 (1994). Here, the officers were going to conduct an inventory search of the vehicle to tow it for lack of insurance. Accordingly, they would have been lawfully permitted to search the car to log any property of value. Law enforcement would have lawfully been allowed to look under the driver's seat and would have found the firearm. This would have started the same progression of probable cause outlined above, leading to the same outcome. Accordingly, the search of the car was lawful and Ward's motion to suppress the search on this basis should be denied.

## IV.   STATEMENTS[2]

The Fifth Amendment guarantees that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In *Miranda v. Arizona*, the Supreme Court established procedural safeguards to protect the core

---

[2] Contingent upon the Court's decision regarding the motion to suppress the stop and search, the ultimate decision on the *Miranda* issues does not affect the admission of the items found in the car because the car would have been searched and evidence would have come to light even in the absence of any questioning. *See Woods*, 711 F.3d 737, 744 (6th Cir. 2013); *United States v. Alexander*, 540 F.3d 494, 504 (6th Cir. 2008) (holding that the evidence in question was admissible despite the failure to provide *Miranda* warnings because it would have been inevitably discovered even in the absence of the defendant's confession).

of the right against self-incrimination. *United States v. Guerrero*, 168 F.4th 454, 460 (6th Cir. 2026). These safeguards require officers to inform suspects of their rights before questioning. *Id*. "These warnings advise individuals that: (1) they have a right to remain silent, (2) anything they say can and will be used against them in a court of law, (3) they have the right to consult with a lawyer before interrogation and to have the lawyer present during interrogation, and (4) if they cannot afford an attorney, one will be appointed for them before questioning begins." *Id*. (citing *Miranda*, 384 U.S. at 467-73). "The warnings required and the waiver necessary . . . are, *in the absence of a fully effective equivalent*, prerequisites to the admissibility of any statement made by a defendant." *Miranda*, 384 U.S. at 476. Ward makes assertions that the reading of the rights was inadequate but admits the warnings "correctly listed the rights." (ECF No. 23, PageID.89.) The Supreme Court has never indicated that the "rigidity of *Miranda* extends to the precise formulations of the warnings given a criminal defendant." *California v. Prysock*, 453 U.S. 355, 359 (1981); *Guerrero*, 168 F.4th at 465. Regardless of the source, Officer Malek used to find them, he adequately informed Ward of his rights, as Ward admits.  The real questions before the Court are 1) did the statements given pre-*Miranda* violate his rights and 2) did Ward voluntarily, knowingly, and intelligently waive his rights after being read his *Miranda* warnings.

13

### A.    Pre-*Miranda* Statements

For a suspect's *Miranda* rights to attach, he must be subject to custodial interrogation. "Under Supreme Court precedent, questions asked 'normally attendant to arrest' aren't 'interrogations' subject to *Miranda*—even if they might yield an incriminating answer." *United States v. Lester*, 98 F.4th 768, 774 (6th Cir. 2024) (citing *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980)). Questions that are a "natural and automatic response to the unfolding events during the normal course of an arrest," and not an "investigatory question or otherwise calculated to elicit an incriminating response" are normally attendant to arrest. *United States v. Woods*, 711 F.3d 737, 741 (6th Cir. 2013). An officer does not engage in interrogation "when [he] asks about information he was already entitled to know through a search incident to arrest." *Lester*, 98 F.4th at 773 (citation and internal quotation marks omitted); *Woods*, 711 F.3d at 740-42. "Courts have found many questions designed to ascertain the identity of an object or to ensure officer safety during an arrest are 'normally attendant to arrest.'" *United States v. Mills*, 2025 WL 1528101, at *4 (E.D. Mich. May 29, 2025) (collecting cases).

In *Woods*, the officer observed a car speeding and subsequently arrested Woods for driving without a license. 711 F.3d at 739. The officer patted down Woods and felt a lump in one of his pockets and asked, "What is in your pocket?"

14

*Id*. Woods said a slang term meaning he was in possession of something illegal. *Id*. The officer asked if it was contraband or a gun and Woods responded it was a gun. *Id*. The officer then asked if the gun was on Woods's person or in the car and Woods stated in the car. *Id*. The Sixth Circuit held the question of "[w]hat is in your pocket" was "not an investigatory question or otherwise calculated to elicit an incriminating response, but rather a neutral and automatic response to the unfolding events during the normal course of an arrest." *Id*. at 741. Accordingly, the Sixth Circuit held the questions did not amount to custodial interrogation. *Id*. at 744.

In *Lester*, the officer asked Lester if "there was anything else on you, any other drugs, anything that would stick or harm me?" while patting him down. 98 F.4th at 772. The Sixth Circuit held the questions did not amount to custodial interrogation because "the officer was entitled to ask about" items found on Lester's person because the officer would have inevitably found them during a search incident to arrest. *Id*. at 773. This case is close to *Lester* with the slight difference being that the location being searched incident to arrest was the car instead of Ward's person. Here, Officer Malek asked if there is anything in the car that is going to "cut, poke, stick, stab me" and then if there is anything illegal in the car. As discussed in Section III.B, the officers were going to tow the car due to no insurance and therefore, lawfully would have found the items located in the car pursuant to an inventory search. The

first question is almost exactly what the officer asked in *Lester*. The second is simply a continuation of questions attendant to the arrest of Ward and the towing of his vehicle. Similarly to *Lester* and *Woods*, the questions posed by Officer Malek could have been "either innocuous or incriminating."[3] *Lester*, 98 F.4th at 774 (quoting *Woods*, 711 F.3d at 741). The officers arrested Ward for driving without insurance and Officer Malek had no knowledge of a firearm when he asked those questions. *See Id.* at 773 (an interaction does not transform into an interrogation when a suspect offers an unexpected answer). The Sixth Circuit has made clear that it would be "an impractical regime of stilted logic" to hold officers could not ask questions about information they were "already entitled to know." *See Woods*, 711 F.3d at 742 (the officer was entitled to search the suspect's person, so he was entitled to ask him what was in his pocket); *Lester*, 98 F.4th at 773 (officer was entitled to search the suspect's person, so he was entitled to ask the suspect if he had drugs or anything that could "stick or harm" him). Accordingly, the questions asked prior to *Miranda*, specifically if Ward had anything that would "cut, poke, stick, stab me" and "anything that's illegal," do not constitute custodial interrogation because they were questions normally attendant to arrest and the inventory search of the car for towing

---

[3] Officer Malek asked the same question to Ward about items on his person when he placed him under arrest and Ward's answer was no.

purposes. Accordingly, Ward's motion as it relates to the answers to these questions should be denied.

### B. Post-*Miranda* Statements

Ward essentially makes two arguments related to the post-*Miranda* statements: (1) that he never validly waived his rights and (2) his statements were coerced. (ECF No. 23, PageId.97-98).

### 1. Waiver

To establish the defendant waived his rights, the government must make such a showing by a preponderance of the evidence. *Colorado v. Connelly*, 479 U.S. 157, 167 (1986). Such a waiver is voluntary "when 'it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.'" *United States v. Fein*, 843 F. App'x 765, 770 (6th Cir. 2021) (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). "It is knowing and intelligent when it is made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id*. Whether a defendant waived his *Miranda* rights depends on the "particular facts and circumstances surrounding that case." *North Carolina v. Butler*, 441 U.S. 369, 373 (1979) (citations omitted). "[A]n explicit statement of waiver is not invariably necessary to support a finding that the defendant waived the right to remain silent or the right to counsel guaranteed by the *Miranda* case." *Id*. at 375-76.;

17

*see also United States v. Miggins*, 302 F.3d 384, 397 (6th Cir. 2002). A waiver may be clearly inferred when a defendant, after being properly informed of his rights and indicating that he understands them, nevertheless does nothing to invoke those rights. *United States v. Nichols*, 512 F.3d 789, 798 (6th Cir. 2008) (statement properly admitted after defendant stated he understood his rights and made statement); *Berghuis v. Thompkins*, 560 U.S. 370, 383-85 (2010).

Here, Ward validly waived his *Miranda* rights. The government agrees there is no express waiver of Ward's rights either in writing or Officer Malek explicitly asking Ward if he waives the rights. However, it is clearly reflected by a preponderance of the evidence that Ward knowingly and voluntarily waived his *Miranda* rights.  Officer Malek read him the *Miranda* warnings and asked if he understood the rights. Ward responded "yes," indicating to any rational observer that he understood his rights. *See United States v. Adams*, 583 F.3d 457, 467-68 (6th Cir. 2009) (Sixth Circuit found Adams waived his rights where officer read Adams his *Miranda* rights and asked if he understood his rights and Adams responded, "I do" and continued talking with officers). Ward was the first one to speak after saying he understood his rights and asked questions about his wallet and phone. Officer Malek then questioned Ward about the gun in the car. As the search progressed, Officer Malek returned to ask Ward additional questions about items as they were found. At

18

no point during the conversation with Officer Malek did Ward request to remain silent or have an attorney present. Ward initiated conversation with Officer Malek again in the patrol car. (Ex. 1 Ofc. Malek Body Camera Video at 37:07). In fact, Ward had no issue advocating for himself by asking Officer Malek to come check the tightness of his handcuffs. (*Id*. at 40:25). The implication from that interaction is that Ward felt comfortable enough to speak-up to the officers about that issue yet still did not assert his rights. Moreover, Ward brings up the subject of a lawyer later on in his interactions with officers. When Officer Albaugh asked Ward about the flyers and items found, Ward asked if he needed a lawyer. This shows Ward understood his rights and could intelligently invoke them if he wanted to. *See United States v. Daniels*, 163 F.4th 992, 1000 (6th Cir. 2026) ("his ultimate decision to end the conversation further confirmed that he knew he could stop talking at any time."). The totality of the circumstances demonstrates that Ward validly waived his *Miranda* rights when talking to officers.  Further, when Ward equivocally invoked his rights by asking if he needed a lawyer, the officers stopped the questioning.

### 2.  Coercion

When a defendant asserts a waiver of his rights was involuntary due to police coercion, the Court must find three criteria before excluding a post-waiver custodial statement: "(1) the police activity was 'objectively coercive,' (2) the coercion in

19

question was 'sufficient to overbear defendant's will,' and (3) the alleged police misconduct 'was the crucial motivating factor in the defendant's decision to offer the statements.'" *Fein*, 843 F. App'x at 770 (quoting *United States v. Luck*, 852 F.3d 615, 622 (6th Cir. 2017); *United States v. Binford*, 818 F.3d 261, 271 (6th Cir. 2016)). The Court considers "the totality of the circumstances to determine whether a defendant's will was overborne in a particular case." *United States v. Craft*, 495 F.3d 259, 263 (6th Cir. 2007) (quoting *Ledbetter v. Edwards*, 35 F.3d 1062, 1067 (6th Cir. 1994)) (internal quotation marks omitted). "Relevant factors include the defendant's age, his level of education and intelligence, whether he was advised of his rights, whether he suffered physical punishment and the length of the questioning endured." *Id*. (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)). These factors are viewed "primarily from the perspective of the police, such that where the police had no reason to believe that the defendant misunderstood the warnings, there is no basis for invalidating the *Miranda* waiver." *United States v. Ramamoorthy*, 949 F.3d 955, 965 (6th Cir. 2020) (quoting *United States v. Al-Cholan*, 610 F.3d 945, 954 (6th Cir. 2010)) (internal quotation marks and alterations omitted).

Looking at the first factor, whether the police activity was objectively coercive, Officer Malek informed Ward of his *Miranda* warnings and Ward affirmatively responded that he understood the rights. Before any questions were

20

asked, Ward asked Officer Malek questions about having his wallet and phone. Ward argues that he was scared of the armed police officers. (ECF No. 23, PageId.98). Ward also describes Officer Malek as belittling and Officer Albaugh's questioning as berating. (ECF No. 23, PageId.95, 98). The Court can watch the interaction for itself.  Officer Malek calmly read him his rights that stated he could remain silent and have an attorney present. *See Daniels*, 163 F.4th at 1000 (finding Daniels identified no police coercion at any kind where officers "calmly read him his rights and clarified that he could remain silent and end the questioning at any time"). Ward stated he understood his rights. As the officer's found more items of note in the car and asked Ward about these items, Officer Malek's tone expresses frustration with Ward's answers but does not rise to the level of being coercive.  Officer Albaugh's interaction with Ward does not even come close to fitting the definition of berating and Officer Albaugh respected Ward's indecision about wanting a lawyer and stopped questioning him. No objective viewer would call these actions coercive.

Additionally, Ward does not identify any other factors of coercion other than the way the officers talked to him. Ward does not address the length of questioning–because it weighs favor of the government. Altogether, Officer Malek and Officer Albaugh combined talked to Ward after arresting him for approximately ten minutes spread out over seven different interactions, including at least one interaction

21

initiated by Ward. Ward was 34 years old and did not appear to have any issues communicating or understanding the officers. In fact, he repeatedly made exculpatory or mitigating statements about not having the items for nefarious purposes, indicating his understanding of the situation. *See e.g., United States v. Tragash*, 691 F. Supp. 1066, 1074 (S.D. Ohio 1988) ("It is clear that defendant understood his rights for he answered some questions with exculpatory or mitigating answers but refused to answer further when the troopers wanted to know who else was involved with the cocaine."). None of the factors laid out by the Sixth Circuit caselaw indicate coercion in this case. Accordingly, Ward's argument that his statements were coerced fails.

If the Court wants to examine the second factor, Ward's argument similarly fails because the alleged coercion in question was not sufficient to overbear defendant's will. As mentioned above, Ward had no issue advocating for himself when it came to asking for his handcuffs to be adjusted and freely asked if he needed a lawyer at the end of the questioning. The officers' actions did not overbear his will to assert his rights since he possibly invoked them and the questioning stopped. *See Daniels*, 163 F.4th at 1000 ("his ultimate decision to end the conversation further confirmed that he knew he could stop talking at any time.").

22

## V.   CONCLUSION

Officer Malek had probable cause to stop Ward's vehicle for driving with no taillights. The vehicle had no insurance. Officer Malek arrested Ward for driving with no insurance and was going to tow the vehicle. Prior to an inventory search, Officer Malek asked Ward questions normally attendant to such a search and Ward admitted he had a firearm in the car. These statements provided probable cause to search the vehicle. Officer Malek adequately warned Ward of his *Miranda* rights and Ward validly waived those rights, free of coercion, and made further statements. Accordingly, Ward's motion to suppress warrantless search (ECF No. 22) and motion to suppress statements (ECF No. 23) should be denied.

Respectfully submitted,

JEROME F. GORGON, JR.
United States Attorney

Dated: July 10, 2026

s/WILLIAM ORR
Assistant United States Attorney
101 First Street, Suite 200
Bay City, Michigan 48708
Phone: (989) 895-5712
william.orr@usdoj.gov
Texas State Bar No. 2410230

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2026, the foregoing document was electronically filed by an employee of the United States Attorney's Office with the Clerk of the Court using the ECF system which will send notification of such filing to the attorney of record for the defendant.

s/WILLIAM ORR
Assistant United States Attorney
101 First Street, Suite 200
Bay City, Michigan 48708
Phone: (989) 895-5712
william.orr@usdoj.gov
Texas State Bar No. 24102308